FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG - 1 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JEFFREY BONNER,

                Petitioner,

    -against-

SUPT. WILLIAM LEE,

                Respondent.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

11-CV-6171 (ENV)

VITALIANO, D.J.

On December 14, 2011, pro se petitioner Jeffrey Bonner filed a habeas corpus application pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. On April 4, 2012, Bonner moved to amend his petition, as well as for a stay and abeyance to allow him to return to state court to exhaust certain claims that he hopes to include in the amended petition. For the reasons that follow, both motions are denied, and the habeas petition as a whole is dismissed.

### Background

On March 7, 2006, at approximately 3:00 am, Bonner, along with two others—Don Terry and Marie Miller—entered a cab driven by Wahab Belo-Osagi in Queens.[1] Belo-Osagi drove them around for approximately 45 minutes, as the passengers gave him conflicting, circuitous directions and asked him personal questions, and at one point asked him whether he had change for $100. Growing concerned about their intentions, Belo-Osagi stopped at a well-lit intersection and asked the passengers to

---

[1] Because Bonner was convicted, the Court recites the following facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

1

exit the cab, stating that they did not have to pay the fare. (Tr. 226.) At that point, Terry pulled out a gun and pressed it against Belo-Osagi's neck, ordering him to look straight and empty his pockets. Bonner instructed Belo-Osagi to face forward while he reached into the driver's seat, and tried unsuccessfully to turn off the car. He then took Belo-Osagi's cell phone and $47 from his jacket pocket, and handed the items to Terry. Loot in hand, the three fled the cab. Moments later, Belo-Osagi stopped an unmarked police vehicle and reported the robbery. The police officers radioed a description of the three passengers, and began canvassing the area with Belo-Osagi in their vehicle. Police first apprehended Miller and then Terry, from whom they recovered the driver's possessions and a gun.[2] About 15 minutes later, another police officer on the lookout for the robbers observed Bonner standing in the bushes of a nearby private residence driveway and, following a short chase, was able to place him in custody. Belo-Osagi identified each of the three suspects as they were apprehended by the police.

The joint jury trial of petitioner and Terry opened on May 5, 2008, in Supreme Court, Queens County. At trial, Bel-Osagi identified Bonner as the person who took his phone and money from his pocket. He pointed to him in court and described him as the "bigger guy" who had been in his cab, as opposed to Terry, who he described as the "slim guy." On cross-examination, Bonner's counsel confronted Belo-Osagi with his June 26, 2006 grand jury testimony. Before the grand jury, Belo-Osagi had been asked whether he had, since the robbery, learned the name of the person who had taken his property from his pocket; he had answered "Yes, that was Don Terry,"

---

[2] Police later determined that the weapon was a BB gun.

2

and proceeded to testify that Terry had taken his cell phone and removed the money from his pocket. (Tr. 275.) In response, Bel-Osagi testified at trial that, when he gave those answers before the grand jury, he had been confused about the two defendants' names, and reaffirmed that it was Bonner, the "big guy," rather than Terry, "the slim guy," who had reached into his pocket. On redirect, Belo-Osagi explained that he had not known the names of the defendants until shortly before his grand jury testimony, when an assistant district attorney had told him the names, and had never seen photographs of either defendant. The prosecutor revisited the issue on summation, noting that the defendants were not present when Belo-Osagi testified before the grand jury, and he had never seen photos of them, so there was no way he would have known which was which by name.

Bonner was convicted of two counts of robbery in the second degree and one count of criminal possession of stolen property in the fifth degree, on September 16, 2008. He was sentenced as a persistent violent felony offender to concurrent prison terms of 23 years to life on each of the robbery counts and one year on the criminal possession of stolen property count. On June 22, 2010, the Appellate Division, Second Department, unanimously affirmed the judgment of conviction, and on September 29, 2010, the Court of Appeals denied leave to appeal. People v. Bonner, 74 A.D.3d 1218 (2d Dept.), lv. denied, People v. Bonner, 15 N.Y.3d 849 (2010). Bonner filed a pro se petition for a writ of habeas corpus in this Court, dated December 7, 2011, on the ground that "[t]he people failed to prove petitioner's guilt beyond a reasonable doubt and the evidence is legally insufficient." On April 4, 2012, Bonner moved to stay the habeas proceeding to allow him to exhaust certain claims in state court, and to amend

his petition to add those claims.

## Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), petitioners seeking federal habeas review must first exhaust their claims in state court before proceeding with their federal habeas petitions. See 28 U.S.C. § 2254(b)(1)(A). In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error. Rhines v. Weber, 544 U.S. 269 (2005).

A district court faced with a motion for stay and abeyance may, under "limited circumstances," "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Id. at 275–77. The petitioner must demonstrate "good cause" for his failure to exhaust his claims in state court. Id. at 277. However, if the unexhausted claim is plainly meritless, the district court must deny the claim on the merits, notwithstanding the petitioner's failure to exhaust and good cause for that failure. See id. (". . . the district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless.").

With regard to claims that have been exhausted in state court, the writ shall not issue unless the state court's decision: (1) "was contrary to," or involved an unreasonable application of, "clearly established federal law" as determined by the United States Supreme Court, or, (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d) ("§ 2254(d)"); see also Gutierrez v. McGinnis, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard

as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. Harrington v. Richter, 131 S. Ct. 770, 785 (2011); see also Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Where AEDPA deference applies, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

Furthermore, federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "'rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" Downs v. Lape, 657 F.3d 97, 101 (2d Cir. 2011), cert. denied, 132 S. Ct. 2439 (2012) (quoting Cone v. Bell, 556 U.S. 449, 465 (2009)). This includes situations in which the state court "declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Federal courts may not review such a procedurally defaulted claim unless the petitioner can show both "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," i.e., that the petitioner is actually innocent. *Id.* at 724; see also Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

Finally, because Bonner is proceeding pro se, "his petition will be construed liberally and interpreted to raise the strongest arguments it suggests." Paez v. U.S., Nos. 11-cv-2688, 08-cr-0823–03, 2012 WL 1574826, at *1 (S.D.N.Y. May 3, 2012)

5

(citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

## Discussion

I.  **Motions for Stay and Abeyance and to Amend**

The Court may grant a stay and abeyance only if Bonner's unexhausted claims are not "plainly meritless." Rhines, 544 U.S. at 277. Bonner seeks to add unexhausted claims for ineffective assistance of counsel: one attacks his trial representation and the other his appellate representation.[3]

To establish an ineffective assistance of counsel claim, a petitioner must show that "counsel's performance was deficient" in that the representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and must also show that "the deficient performance prejudiced the defense" in that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In evaluating counsel's competence, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Petitioner bears the burden of proving that both Strickland prongs are met. Byrd v. Evans, 420 Fed. App'x 28, 30 (2d Cir. 2011) (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)).

Bonner contends that his trial counsel was ineffective on two grounds. First, he asserts that "[t]rial counsel failed to investigate an eyewitness, Marie Miller, whom it has since been discovered made an exculpatory statement indicating that, although

---

[3] Bonner presents some of the grounds for his claims in his proposed amended petition, and asserts others in the body of his motion. Given Bonner's pro se status, the Court will consider all arguments Bonner raises regardless of where they appear.

6

petitioner was present, he did not participate in the robbery, which was consistent with the petitioner's grand jury testimony and his defense at trial." (Am. Pet. at 7.) This claim is plainly meritless. "Counsel's decision to interview witnesses is a strategic decision; given the strong presumption in favor of counsel providing reasonable professional assistance [under Strickland], such strategic decisions may not be second-guessed." Byas v. Keane, 97-CV-2789, 1999 WL 608787, at *6 (S.D.N.Y. Aug. 12, 1999). Bonner's trial counsel's decision not to investigate Miller as a potential defense witness was not professionally unreasonable. Certainly, and properly, in the mix of counsel's analysis was the fact that Miller had been arrested and charged in connection with the very crime for which Bonner was being tried. Evidence was presented at trial that she had played a critical role in the robbery. Counsel may have reasonably believed that, given her participation in the crime, her credibility would have been subject to easy attack, and that highlighting associations between Miller and Bonner would have reflected unfavorably upon him. See LaMorte v. United States, 73 F. Supp. 2d 406, 409 (S.D.N.Y. 1999) (Counsel's decision not to interview a potential witness who was in prison was not unreasonable). Moreover, aside from a felon's naked absolution, assuming Miller would take the stand at all, her testimony would place the "big guy" in the cab throughout the victim's long ordeal. Trial counsel's strategic decision not to divert resources to investigate or interview Miller in no way offends Strickland. This branch of petitioner's claim must plainly be dismissed.

Second, Bonner argues that his trial counsel failed to sufficiently impeach Belo-Osagi regarding his earlier testimony that the person who took property from his

7

pocket was named Terry. (Pet'r's Mot. Am. Stay at 6.) In particular, Bonner claims that his lawyer failed to call Terry's investigator as a witness, which would have revealed that in a pretrial interview with the investigator, Bel-Osagi had correctly identified the petitioner and Terry by name, and thus knew their names at least by that time. This, Bonner argues, "was critical to impeaching the only witness," and would have undermined the prosecutor's assertion that Bel-Osagi's grand jury statement should be disregarded because he was confused, and had not known each defendant's name. (Id.)

However, Bonner's counsel did thoroughly impeach Belo-Osagi with his grand jury testimony—the witness acknowledged his misidentification in the grand jury. Moreover, Bonner fails to show how calling his codefendant's investigator would have benefitted him at all, let alone changed the outcome of the trial (and what exception to the hearsay rule would permit the witness to testify about the investigation). In any event, while petitioner's counsel did not call Terry's investigator as a witness, he did question Belo-Osagi about his conversation with the investigator. (See Tr. at 295–296). Belo-Osagi testified that he had never volunteered his assailants' names to the investigator, but rather he had described the defendants by their sizes, and the investigator had labeled them with names. (Id.) Dispositionally, even if Belo-Osagi had correctly identified Bonner and Terry by name in a pretrial interview, that fact would do little to undermine his testimony that he had been confused at some time before the interview about the names of the perpetrators, that is, at the time of his grand jury testimony.[4] With such antecedents, counsel's decision not to attempt to

---

[4] Bonner claims that it was the prosecutor's position that Belo-Osagi knew the defendants by

8

call the investigator as a witness was not unreasonable, or in any way below the professional norm.

As for appellate counsel, petitioner's ineffectiveness claim is interposed on three grounds. First, Bonner asserts that appellate counsel should have argued that his trial counsel was ineffective for failing to preserve a claim for legal insufficiency of the evidence. However, any contention that the evidence against him was insufficient to support the convictions is itself meritless. In evaluating a legal insufficiency claim, a habeas court "must undertake a holistic assessment of the entire record in the light most favorable to the [prosecution], to decide not whether 'it believes that the evidence . . . established guilt beyond a reasonable doubt,' but whether 'any rational trier of fact' could have reached this conclusion." Policano v. Herbert, 453 F.3d 79, 92 (2d Cir. 2006) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis original)). Additionally, "a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Cavazos v. Smith, 132 S.Ct. 2, 6 (2011) (internal quotation marks omitted).

The evidence of Bonner's guilt included the victim's positive identification of Bonner, both at the scene and in court, as one of the men who entered his taxi and as the man who took his belongings from his pocket. As soon as the victim finished pointing, legal sufficiency was established. For good measure, the People also offered

---

name as of the time of trial, but not before then, and that the point at which Belo-Osagi learned their names was critical to the case against him. This is plainly belied by the record, which shows that the People argued no such thing and that, even at trial, Belo-Osagi was unsure of the defendants' names.

the arresting officer, who identified Bonner in court, and testified that he discovered Bonner 15 minutes after the robbery, hiding in the bushes several blocks from where the robbery had occurred. The officer also testified that Bonner had fled when confronted. (Tr. at 403.) Taken together, this and other evidence was more than sufficient to support petitioner's conviction beyond a reasonable doubt. As such, it was objectively reasonable for trial counsel to decline to pursue a legal sufficiency claim. An ineffective assistance of counsel claim cannot be supported on this ground. Since trial counsel was not constitutionally ineffective, "there can be no issue of ineffective assistance on appeal." Deeds v. Superintendent, E. Corr. Facility, 05-CV-5680, 2006 WL 299069 *4 (S.D.N.Y. Jan. 27, 2006); see also Rolling v. Fischer, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006).

Next, petitioner contends that appellate counsel failed to raise two claims of prosecutorial misconduct. First, that the prosecutor improperly stated during summation that "[t]here was a plan and it was executed," (Tr. at 599), suggesting that the robbery was planned and premeditated when, according to Bonner, there was no evidence that it was. Fatally, however, there was evidence presented at trial to support the theory that the culprits had executed a premeditated plan. The evidence included Belo-Osagi's testimony that the defendants gave him circuitous driving directions and engaged in other suspicious behavior leading up to the moment when Terry displayed a gun. There can be no quarrel that the prosecutor's statement in closing was reasonable, and any failure by petitioner's appellate counsel to argue otherwise was not ineffective assistance of counsel. United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("failure to make a meritless argument does not amount to

10

ineffective assistance.").

Bonner also targets the prosecutor for improper bolstering of witness testimony. Specifically, he claims that the prosecutor bolstered Belo-Osagi's testimony by using his prior statements to the police. However, the record is devoid of any evidence of such bolstering. If anything, it was petitioner's counsel, not the prosecutor, who called attention to Belo-Osagi's statements to the police. (Tr. at 276.) The prosecutor actually objected to these questions, on the ground that the police notes were not in evidence. (Id. at 277-78). It is a meritless ground.

Finally, petitioner objects that his appellate counsel was ineffective in failing to argue on appeal that his sentence was excessive, pointing out that his co-defendant's sentence "was modified from 25 years to life to 20 years to life on appeal after a challenge to his sentence under . . . circumstances which would apply in petitioner's case also." (Pet'r's Mot. at 2.) Yet, Bonner fails to demonstrate the grounds on which his codefendant's sentence was modified, let alone show that the same circumstances were present in his case. Nor did the Appellate Division explain its decision to reduce Terry's sentence. See People v. Terry, 78 A.D.3d 1207, 1208, 912 N.Y.S.2d 122, 124 (2010) leave to appeal denied, 16 N.Y.3d 800, 944 N.E.2d 1157 (2011). Bonner's motion papers are silent, for example, as to how exactly, in time, number, and degree his criminal history differed from that of Terry, assuming Terry had any criminal history at all. The record does show that Bonner was sentenced as a persistent violent felony offender, which could account for any sentencing disparity.

Moreover, Bonner's sentence of 23 years to life is less than the maximum possible for his crimes of conviction, which is 25 years to life. See New York Penal

11

Law §§ 70.08(3)(b), 160.10(2)(b). Counsel's decision not to challenge this sentence was not unreasonable, given that a sentence within the range prescribed by state law does not, as a matter of law, present a federal constitutional issue, White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992), and the sentencing court has "wide latitude" in determining what is a fair and proportionate sentence. Archer v. Fischer, 2009 WL 1011591 (E.D.N.Y. Apr. 13, 2009) aff'd sub nom. Mannix v. Phillips, 619 F.3d 187 (2d Cir. 2010). In light of this wide sentencing latitude, the mere fact that Terry's originally higher sentence was reduced by the Appellate Division does not mean that Bonner's should or would have been reduced. Given the overall circumstances, appellate counsel's strategic decision to emphasize other arguments at the expense of seeking a sentence reduction can hardly be classified as practice unacceptably below the professional norm. Bonner's last argument that his appellate counsel was ineffective is also, therefore, meritless.

In sum, all of Bonner's unexhausted claims are categorically meritless. Accordingly, his motion for stay and abeyance is denied.[5] Consequently, any amendment to add those claims would be futile. The motion to amend the petition to add those unexhausted claims is, therefore, also denied. See Spells v. Lee, 11-CV-1680 (KAM) (JMA), 2012 WL 3027865 (E.D.N.Y. July 23, 2012); Rivera v. Ercole, 07 CIV 3577 RMB AJP, 2007 WL 2706274 *22 (S.D.N.Y. Sept. 18, 2007). ("[U]pon a motion to amend so as to include an unexhausted claim, allowance of the amendment would be futile if the court also declined to use the stay and abeyance procedure while the petitioner exhausts the claim in state court.").

---

[5] Because the claims are plainly meritless, the Court need not address Bonner's claim that he had good cause for his failure to raise them. See Rhines, 544 U.S. at 277.

## II. The Original Petition

Bonner's sole exhausted claim is that the evidence at trial was legally insufficient to support his conviction. In dismissing this claim on direct appeal, the Appellate Division held that it was not preserved for appellate review—apparently because counsel failed to specifically object on this ground, but rather made only a general motion to dismiss. In any event, the court held, the claim was without merit. Bonner, 74 A.D.3d at 1218. This decision rested upon "a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). It is a firmly established rule of state procedural practice that "a general objection is not sufficient to preserve an issue" for appeal, because it does not "alert the court to defendant's position." Garvey v. Duncan, 485 F.3d 709, 714-16 (2d Cir. 2007).

Nor can petitioner overcome the state procedural bar to his legal sufficiency claim. To do so, Bonner must demonstrate either (1) cause for *and* prejudice resulting from the default, Gray v. Netherland, 518 U.S. 152, 162 (1996), or (2) that "failure to consider the [defaulted] claim will result in a fundamental miscarriage of justice." 501 U.S. 722, 750. Petitioner cannot establish prejudice because, as discussed supra, his legal insufficiency claim is plainly meritless. See Capiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988) aff'd, 852 F.2d 59 (2d Cir. 1988). There is, of course, no claim of actual innocence nor the assertion of any fact that would support an application of the fundamental miscarriage of justice exception. See Murray v. Carrier, 477 U.S. 478, 496 (1986). This claim, too, is dismissed.

## Conclusion

For the foregoing reasons, the motions for a stay and abeyance and to amend the petition are denied. The petition is dismissed and the issuance of the writ of habeas corpus is denied.

Additionally, as Bonner makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-5 (1962).

The Clerk of Court is directed to enter judgment for respondent and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
July 17, 2014

/s/ ENV
_____
ERIC N. VITALIANO
United States District Judge